UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

JOYCE HUANG                                                   :
                                                             :
                                                             :
                                   Plaintiff,                :        **COMPLAINT**
                                                             :
                    -against-                                :
                                                             :        **JURY TRIAL DEMANDED**
                                                             :
MUSEUM OF CHINESE IN AMERICA, NANCY                          :
YAO MAASBACH, and JOSH DAVIS                                 :
                                                             :
                                                             :
                                   Defendants.               :
------------------------------------------------------------ X


        Plaintiff Joyce Huang ("Plaintiff"), by and through her attorneys, William K. Li Law,

PLLC, for her Complaint against Defendants Museum of Chinese in America ("Defendant

MOCA"), Nancy Yao Maasbach ("Defendant Maasbach") and Josh Davis ("Defendant Davis")

(collectively "Defendants") alleges as follows:

## INTRODUCTION

        1.      Plaintiff is a former employee of Defendant MOCA who at all relevant times

resided, and still resides, in New York City.

        2.      Plaintiff opposes sexual harassment and discrimination.

        3.      Defendant MOCA is Plaintiff's former employer and terminated her and her then

boyfriend's (and now husband) employment in retaliation for standing up to and complaining

about sexual harassment on behalf of a young female college intern, Claire Mondry ("Ms.

Mondry") and Grant Writer Associate Julia Chang ("Ms. Chang"), both of whom were sexually harassed by their male supervisor, Joseph Duong ("Mr. Duong").

4.     Defendant MOCA is a not-for-profit corporation, qualified under 28 U.S.C. §501(c)(3) as a tax-exempt organization, and is registered with the Charities Bureau of the New York Attorney General's Office.

5.     Defendant MOCA was founded in 1980.

6.     Defendant MOCA fosters a hostile work environment repleted with sexual harassment and retaliates against employees who reports and stands up to sexual harassment.

7.     Plaintiff, as a woman, is horribly offended by the hostile work environment at Defendant MOCA.

8.     Defendant MOCA has at least two (2) other publicly known pending retaliatory matters against them by former employees who, similar to Plaintiff, were terminated for standing up and speaking up against sexual harassment.

9.     Former employee Grayson Chin ("Mr. Chin") currently has a pending case against Defendant MOCA in the Supreme Court of New York in New York County in the matter of *Chin v. Museum of Chinese in America, Index Number 151632/2021*.

10.     Another former employee Justin Onne (Mr. Onne) has a pending matter against MOCA in the EEOC.

11.     Upon information and belief, the EEOC has rendered a Probable Cause finding against Defendant MOCA on behalf of Mr. Onne.

12.     Upon information and belief, there were other sexual harassment and/or retaliatory claims made by other employees which Defendant MOCA has privately settled.

13.     Defendant MOCA had over fifteen (15) employees during Plaintiff's employment.

14.     MOCA maintains its principal place of business at 215 Centre Street, New York, New York 10013.

15.     Defendant Maasbach was, and continues to be, Defendant MOCA's president.

16.     Defendant Maasbach has individual liability under both New York State Human Rights Law and New York City Human Rights Law as she aided and/or abetted in the retaliation of Plaintiff and the creation of a hostile work environment.

17.     Defendant Davis had several responsibilities at Defendant MOCA, including being responsible for its human resources department during Plaintiff's employment.

18.     Defendant Davis has individual liability under both New York State Human Rights Law and New York City Human Rights Law as he aided and/or abetted in the retaliation of Plaintiff and the creation of a hostile work environment.

## NATURE OF THE ACTION

19.     This action is brought against Defendants to redress the deprivation of rights secured to Plaintiff by the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and New York City Administrative Code § 8-101 *et seq*.

20.     Plaintiff alleges that Defendants retaliated against her by terminating her employment for complaining about sexual harassment in the workplace.

21.     Plaintiff further alleges that she was discriminated against based on her gender by having to work in hostile work environment due to rampant sexual harassment conduct by male supervisors.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. §§ 1343 and 1331, because the claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights. This Court has supplemental subject matter jurisdiction over Plaintiff's State and City law claims under 28 U.S.C. § 1367(a), because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

23.     Declaratory and injunctive relief is sought under 28 U.S.C. § 2001 et seq.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), and 42 U.S.C. § 2000e-5(f)(3), because Defendant has offices, conducts business, and can be found in this District, and because the causes of action arose and the acts and omissions complained of occurred in this District.

## CONDITIONS PRECEDENT

25.     On or about November 12, 2019 Plaintiff filed a charge of discrimination and retaliation with the New York City Commission on Human Rights ("NYCHR") against Defendant MOCA, Defendant Davis and Joseph Duong ("Mr. Duong").

26.     The NYCHR in turn dual filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") on behalf of Plaintiff against Defendant MOCA on or about November 12, 2019. This EEOC filing was made less than 300 days after one or more occurrences of Defendant MOCA's retaliatory conduct against Plaintiff.

27.     On or about January 21, 2021, at the Plaintiff's request, the NYCHR issued a Notice of Administrative Closure so Plaintiff can pursue her matter in this Court.

28.     On or about January 22, 2021, at the Plaintiff's request, the EEOC issued a Notice of Right to Sue so Plaintiff can pursue her matter in this Court.

29.     Plaintiff files this action within ninety (90) days of receipt of the Notice of Right to Sue letter from the EEOC.

## FACTS

30.     Plaintiff was hired as a part-time Visitor Services Representative by Defendant MOCA in or about March 2017.

31.     In or about September 2018, Plaintiff applied for and received the fulltime position of Programs and Museum Experience Associate at Defendant MOCA.

32.     Plaintiff's job duties as a Programs and Museum Experience Associate included acting as the point person for vendors and guest speakers, screen talent and volunteers for MOCA's Music and Mic nights, coordinate program schedule across the Exhibition and Education departments, create internal and external promotional materials, update and manage programs on MCOA's website and send out biweekly/monthly newsletters.

33.     Plaintiff had an impeccable employment history at Defendant MOCA and she only received praises for her work.

34.     Plaintiff was never issued any disciplinary notice nor was she ever subject to any disciplinary action.

35.     During Plaintiff's employment, MOCA never distributed any harassment, discrimination or retaliation policies or employment handbook to its employees.

36.     During Plaintiff's employment, MOCA never had any harassment, discrimination

or retaliation training for its employees, despite being mandated to do so under both New York State and New York City law starting in 2018.

37.     Mr. Duong was Plaintiff's direct supervisor at Defendant MOCA.

38.     Mr. Duong's title during Plaintiff's employment was Director for Programs and Guest Experience

39.     In or about September 2018, Ms. Mondry was hired as a college intern by Defendant MOCA working in Visitor Services.

40.     Ms. Mondry was directly managed by Edward Cheng at the time of her hire but was later directly managed by Mr. Duong starting in January 2019.

41.     Mr. Duong and another manager, Facilities Manager Erwin Geronimo (Mr. Geronimo"), would often openly and notoriously engage in sexually harassing conduct in the workplace without any consequences.

42.     By way of example, both Messrs. Duong and Geronimo frequently made inappropriate and sexually charged statements in front of women, as to both employees and visitors, in the workplace.

43.     In or around January 2019, Plaintiff and Mr. Chin witnessed Mr. Geronimo, suggestively and without permission, stroking employee Hailey Savage's ("Ms. Savage") back, shoulder and neck area during worktime.

44.     Plaintiff was horribly offended by Mr. Geronimo's conduct.

45.     Both Plaintiff and Mr. Chin told Mr. Geronimo to stop his inappropriate touching. Plaintiff specifically told Mr. Geronimo that his conduct was "sexual harassment."

46.     However, Mr. Geronimo was undeterred and told both Plaintiff and Mr. Chin "you guys are all robots."

47.     In short, the conduct of Messrs. Duong and Geronimo, both of whom were managers, only evidences Defendant MOCA's indifference to sexual harassment in the workplace.

48.     In or about November 2018, Ms. Mondry informed Plaintiff in person outside of MOCA that Mr. Duong was engaging in a series of sexually harassing conduct against her which made her feel uncomfortable.

49.     Then in or about January 2019, Ms. Mondry informed Plaintiff by text messages of Defendant Duong's continued sexually harassing conduct.

50.     Ms. Mondry informed Plaintiff that:

   a.   Mr. Duong sent Ms. Mondry personal and suggestive text messages during after work hours. By way of example, Mr. Duong sent her a text message stating "**If I was a teenage boy I'd sent you a naked pic already**" (emphasis added) during after work hours;

   b.   Mr. Duong stalked Ms. Mondry's Instagram posts and commented on them with creepy and cryptic messages which he later deleted upon Plaintiff's complaint to Defendant Davis on behalf of Ms. Mondry at the end of January 2019;

   c.   Ms. Mondry was uncomfortable with Mr. Duong scheduling her to work with him alone late into the evening and closing the museum; and

   d.   During a visit by Ms. Mondry's mother's visit to the museum, Messrs. Duong and Geronimo even made inappropriate comment about Ms. Mondry's mother's look and expressed their desire to start a romantic relationship with her. Ms. Mondry informed both Plaintiff and Mr. Chin about this incident.

51.     Ms. Mondry, as a college intern, was understandably timid and scared to report her supervisor's conduct to human resources or management.

52.    Ms. Mondry did not even know how to report any such incidents as Defendant did not have such policy or procedure.

53.    The only person which Ms. Mondry was comfortable in confiding to was Plaintiff, who was also a non-supervisory female employee.

54.    Plaintiff also became aware of Mr. Duong's sexually harassing conduct towards Ms. Chang.

55.    Ms. Chang informed Plaintiff in person in or about October 2018 that Mr. Duong was likewise sending her unwanted creepy Instagram messages and sexually explicit and suggestive text messages.

56.    In or around the final week of January 2019, Plaintiff informed Defendant Davis during lunch at Baz Bagel located on 181 Grand Street that she was reporting concerns that were brough to her attention by Ms. Mondry and Ms. Chang.

57.    During this meeting, Defendant Davis DID NOT TAKE ANY NOTE nor did he even appeared to be interested in asking any questions.

58.    On or about February 1, 2019, Defendant Maasbach and Mr. Duong congratulated Plaintiff for successfully executing a large event at the museum at the end of January 2019 to February 1, 2019.

59.    In addition, Plaintiff was given time off on February 4 and 5, 2019 by Mr. Duong for her hard work during this event.

60.    Upon information and information, Defendant Davis met with Ms. Mondry on or about February 4, 2019 at a coffee shop near MOCA to discuss the sexual harassing and discriminatory conduct by Mr. Duong.

61.    Upon information and belief, Defendant Davis likewise failed to make any

proactive inquiries, nor did he take ANY note during his meeting with Ms. Mondry.

62.     Based upon information and knowledge, Ms. Mondry sent a follow-up email to Defendant Davis on the same day as their meeting, which included among other things, a screenshot of the text message from Defendant Duong where he wrote "**If I was a teenage boy I'd sent you a naked pic already**" (emphasis added) to which Defendant Davis acknowledged receipt of.

63.     Defendant Davis, in addition to being the only person in charge of MOCA's human resources department, was also in charge with MOCA's IT and accounting.

64.     Based upon Defendant Davis' LinkedIn profile (last accessed March 16, 2021), it does not appear he ever had any job experience in human resources prior being hired by MOCA in July 2015.

65.     Upon information and belief, NOT ONE SINGLE INVESTIGATIVE DOCUMENTATION exists in regard to Plaintiff's complaint to Defendant Davis.

66.     In the evening of February 5, 2019, Defendant Davis emailed Plaintiff to meet with him at the Nickel and Diner at 1 Howard Street rather than reporting to work on the morning of February 6, 2019.

67.     During this February 6, 2019 meeting, Defendant Davis informed Plaintiff of her termination from Defendant MOCA for the pre-textual reasons by alleging that Plaintiff lacked professionalism and productivity and had poor judgment.

68.     Defendant Davis further falsely accused Plaintiff of providing alcoholic beverage to Ms. Mondry, who upon information and belief, was under the drinking age of 21 at the time.

69.     However, it was actually Defendant Maasbach who on several occasions poured alcoholic beverage for Ms. Mondry during MOCA events and/or functions.

70.     In addition, Mr. Duong has on many occasions provided alcoholic beverages to not only Ms. Mondry, but other underage interns during Defendant MOCA events and functions.

71.     In one occasion, Mr. Duong even directed Ms. Mondry to work at the bar/alcohol station during one of Defendant MOCA's events/functions.

72.     A number of other employees, including, but not limited to, Mr. Chin, Ms. Savage, Molly Gibson, Debra Nguyen ("Ms. Nguyen") and Mindy Chen witnessed Defendant Maasbach and Mr. Duong providing alcoholic beverages to Ms. Mondry and other underage interns.

73.     During the February 6, 2019 termination meeting, Defendant Davis also falsely accused Plaintiff of giving her husband preferable working schedules during an unspecific time period, even though Plaintiff did not even have any such authority to do so.

74.     This is especially shocking as Plaintiff has never received any warning or reprimand from Defendant MOCA.

75.     In fact, and as aforementioned, she received praised from Defendant Maasbach and Mr. Duong as recently as February 1, 2019.

76.     To add insult to injury and to intimidate other employees from speaking up, Defendant MOCA also fired Plaintiff's husband on the same day.

77.     Plaintiff and her husband were terminated due to obvious retaliatory animus as a result of her complaint about sexual harassment in the workplace due to the close proximity in time of when she complained about sexual harassment and when she and her husband were terminated with pre-textual reasons.

78.     Upon information and belief, both Defendants Maasbach and Davis made the decision and/or aided and abetted in the decision to retaliatorily terminate Plaintiff and her husband's employment.

79.     Indeed, Defendant MOCA chose to immediately fire Plaintiff and her husband after Defendant Davis' meeting with Ms. Mondry rather than terminating or even suspending Messrs. Duong and Geronimo.

80.     Upon information and belief, Defendant Duong continued to be employed by Defendant MOCA until he voluntarily resigned and took a job in Los Angeles in December 2019.

81.     Based on Defendant MOCA's website, Mr. Geronimo is still employed as of the date of this Complaint. ((mocanyc.org/people/erwin-geronimo) (last accessed March 25, 2021)).

82.     In an usual move, Defendant Maasbach scheduled a staff meeting a couple of hours after Plaintiff and her husband's termination, to openly announce to the staff that both Plaintiff and her husband had been terminated.

83.     It is not Defendant MOCA's usual practice to hold staff meetings to announce the termination of employees.

84.     Upon information and belief, Defendant Maasbach admitted that she made the decision to terminate both Plaintiff and her husband during the staff meeting.

85.     During the meeting, employees, including Ms. Nguyen, expressed shock that Plaintiff and her husband had any issues in the workplace or that they were somehow unprofessional.

86.     This meeting was clearly held to intimidate employees to not to speak up in regard to sexual harassment or any other unlawful conduct in the workplace.

87.     Upon information and belief, other employees, including Mr. Chin, Ms. Savage and Mr. Onne, were also terminated for complaining and speaking up about sexual harassment in 2019.

88.     Defendants as a result further fostered and encouraged a hostile work environment by terminating employees who standup to sexual harassment while allowing the harassers to

11

continue to be employed.

## COUNT I

**(Retaliation in Violation of Title VII Against Defendant MOCA)**

89.     Plaintiff realleges each and every allegation above as though set forth in full herein.

90.     By the actions described above, among others, Defendant MOCA, through the action of Defendants Maasbach and Davis, retaliated against Plaintiff on the basis of her protected activities in violation of Title VII by, *inter alia*, terminating her employment for engaging in the protected activity within a month of reporting sexual harassment and discriminatory practices.

91.     As a direct and proximate result of Defendant MOCA's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, emotional distress and economic harm for which she is entitled to an award of damages.

92.     Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## COUNT II

**(Retaliation In Violation of New York Human Rights Law Against All Defendants)**

93.     Plaintiff realleges each and every allegation in paragraphs above as though set forth in full herein.

94.     By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYSHRL by, *inter alia*, terminating her employment for engaging in the protected activity of reporting sexual harassment in the workplace.

95.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, emotional distress and

economic harm for which she is entitled to an award of damages.

96.     To the extent that Defendants Maasbach and Davis are not individually liable as Plaintiff's employer, Defendants Maasbach and Davis are liable under the NYSHRL because they aided and abetted the unlawful retaliatory conduct.

## COUNT III

**(Retaliation In Violation of New York Human Rights Law Against All Defendants)**

97.     Plaintiff realleges each and every allegation in paragraphs above as though set forth in full herein.

98.     By the actions described above, among others, Defendants retaliated against Plaintiff on the basis of her protected activities in violation of the NYCHRL by, *inter alia*, terminating her employment for engaging in the protected activity of reporting sexual harassment in the workplace.

99.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of damages.

100.    Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

101.    To the extent that Defendants Maasbach and Davis are not individually liable as Plaintiff's employer, Defendants Maasbach and Davis are liable under the NYCHRL because they aided and abetted the unlawful retaliatory conduct.

## COUNT IV

**(Hostile Work Environment Based on Gender in Violation of Title VII Against Defendant MOCA)**

102.    Plaintiff realleges each and every allegation in paragraphs above as though set forth

in full herein.

103.   Plaintiff belongs to a protected class based on her gender.

104.   By the actions described above, among others, Defendant MOCA violated Title VII by creating and fostering a hostile work environment against women.

105.   As a direct and proximate consequence of Defendant MOCA's hostile work environment against women, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

106.   Defendant MOCA's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## COUNT V

### (Hostile Work Environment Based on Gender in Violation of NYSHRL Against All Defendants)

107.   Plaintiff realleges each and every allegation in paragraphs above as though set forth in full herein.

108.   Plaintiff belongs to a protected class based on her gender

109.   By the actions described above, among others, Defendants violated NYSHRL by fostering a hostile work environment against women.

110.   As a direct and proximate consequence of Defendants' hostile work environment against women, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

111.   Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

14

112.    To the extent that Defendants Maasbach and Davis are not individually liable as Plaintiff's employer, Defendants Maasbach and Davis are liable under the NYSHRL because they aided and abetted the unlawful discriminatory conduct.

## COUNT VI

**(Hostile Work Environment Based on Gender in Violation of NYCHRL Against All Defendants)**

113.    Plaintiff realleges each and every allegation in paragraphs above as though set forth in full herein.

114.    Plaintiff belongs to a protected class based on her gender.

115.    By the actions described above, among others, Defendant MOCA violated NYCHRL by fostering a hostile work environment against women.

116.    As a direct and proximate consequence of Defendants' hostile work environment against women, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

117.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

118.    To the extent that Defendants Maasbach and Davis are not individually liable as Plaintiff's employer, Defendants Maasbach and Davis are liable under the NYSHRL because they aided and abetted the unlawful discriminatory conduct.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

A.      declaring that Defendant's actions and practices violated Title VII, New York State Human Rights Law, and New York City Human Rights Law;

B.      directing Defendant to make Plaintiff whole by providing her back pay, front pay,

and reimbursement for any and all lost benefits;

C.      directing Defendant to pay Plaintiff compensatory damages for her emotional
        distress caused by Defendants' discriminatory conduct;

D.      directing Defendant to pay Plaintiff punitive damages sufficient to punish and deter
        continuation of Defendant's unlawful employment practices;

E.      directing Defendant to pay for Plaintiff's reasonable attorneys' fees and legal
        expenses; and

F.      granting additional relief as this Court deems just and proper.


Dated: New York, New York
       March 25, 2021


                                        WILLIAM K LI LAW, PLLC

                                        _____
                                        William Li
                                        200 Park Avenue, 1700
                                        New York, New York 10166
                                        T: (212) 380-8198
                                        wli@wlilaw.com
                                        *Counsel for Plaintiff*